John Wesley ELLIOTT

v.

WARDEN, MARYLAND PENITENTIARY.

Civ. No. 14478.

United States District Court
D. Maryland.

Feb. 5, 1965.

Allen B. Spector, Baltimore, Md., (court-appointed), for petitioner.

Thomas B. Finan, Atty. Gen., of Maryland, and Franklin Goldstein, Asst. Atty. Gen., Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

This is a petition for a writ of habeas corpus filed by a State prisoner, who is presently serving a life sentence after a conviction of first degree murder in the Criminal Court of Baltimore (Tucker and Cullen, JJ., without a jury), his

original death sentence having been commuted to life imprisonment by Governor McKeldin.

Petitioner is pressing three contentions in this Court: (1) that he was denied an examination with respect to his mental competency to stand trial, which he claims his counsel requested before the trial began; (2) that his conviction was obtained by perjured testimony on the part of the witness Maude Belle Beckwith; and (3) that his conviction was obtained by the admission in evidence of a written statement which he made to the police on November 11, 1956, after his indictment on November 8, and which he now claims (a) was involuntary because he had been denied counsel, or (b) was made after indictment, when he was not represented by counsel, and had neither been advised of nor waived his right to counsel.

The Attorney General, representing respondent, denies the factual basis for contentions (1), (2) and (3) (a). In reply to contention (3) (b) he argues that the statement was exculpatory, consistent with Elliott's position throughout, and that the failure of his trial counsel to object to the statement was deliberate, thus waiving any objection to its admission. The Attorney General also takes the position that petitioner's contention (3) (b) is based upon the decision of the Supreme Court in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (May 18, 1964), which was decided after the last opinion of the Court of Appeals of Maryland in this case, Elliott v. Warden, 233 Md. 649, 197 A.2d 237 (February 7, 1964), and that in the interest of comity, the Maryland Courts should be allowed to consider the effect of Massiah before this Court makes a ruling which would necessarily affect many other State Court cases.

A mass of documentary evidence has been offered, as well as the testimony of petitioner, one of the police sergeants who took the statement in question, and several other witnesses. From that evidence the Court finds the facts set out below.

### Facts

Elliott, a native of North Carolina, was in his late forties at the time of the shooting. He had left school at age 12 to go to work, had been married and separated, had been convicted of assault in North Carolina and, after escaping from prison, had come to Baltimore as a fugitive from justice. After his arrival here, he began to live with Maude Belle Beckwith. That relationship continued until Christmas 1955, and was probably renewed occasionally during the first part of 1956. Sometime before September 1956, Maude Belle became enamored of Lindsay Calhoun and they applied for a marriage license on September 10. Elliott shot and killed Calhoun on the morning of September 12.

The evidence at the trial was conflicting as to just what happened on that day. The State's evidence is summarized in the opinion of the Court of Appeals of Maryland on direct appeal from the conviction. Elliott v. State, 215 Md. 152, 137 A.2d 130 (1957). Defendant testified that early that morning Calhoun had struck him over the head with a rung of a chair and had suggested that they shoot it out. Elliott further testified that he went home, got his shotgun, and fired at close range when Calhoun, passing Elliott's house, put his hand in his pocket. Elliott's principal defense has always been that he shot in self defense. Although Elliott says that he thought of turning himself over to the Baltimore City Police, in fact he hitchhiked to his family's home in Dunn, North Carolina. A day or two later he got a job in Maxton, North Carolina, some 100 miles from Dunn, where he was arrested by the FBI on a fugitive warrant on November 6, 1956. Elliott testified at his trial that he told the FBI men who arrested him in North Carolina that he "had shot a fellow". He further said he did not go into detail with them as to how he had shot the man.

The FBI promptly took Elliott to the jail at Fayetteville, where he was given a hearing before a United States Commissioner. Elliott waived extradition at the hearing. It does not appear that he either requested counsel or was offered counsel.

After learning of the arrest, the State's Attorney for Baltimore City obtained an indictment from the grand jury in Baltimore on November 8, and State officers left for Fayetteville on the evening of November 9. The next morning these officers confronted Elliott and he consented to go back to Baltimore with them. They left Fayetteville by train that evening and arrived in Baltimore about 7:30 a. m. on November 11. On the train, the officers encouraged Elliott to talk and he told them substantially the same story that he has told all along. Before the officers obtained the oral statement from Elliott on the train, they did not advise him of his rights.

About two hours after they arrived in Baltimore, the officers took a long signed statement from Elliott, in which he admitted the shooting but claimed that he acted in self defense. That statement was an elaboration of what he had said on the train and was similar to his testimony at the trial. At the beginning of the statement, the officers told Elliott: "What you say must be freely and willing on your part (sic). And what you say can be used for you or against you in a court of law." The officers did not advise him of his right to an attorney.

Elliott testified at the hearing in this Court that he had asked for permission to call an attorney in Baltimore before the statement was taken, but I do not believe his testimony, which is denied by the only officer available. Elliott is not a credible witness. A number of his statements on the stand in this Court are contradicted by statements he had previously made. Moreover, in his former petitions in the State Courts and in this Court, he has contended several times that his written statement was involuntary because he had not been advised of his right to counsel, but he has never heretofore contended that he asked for counsel or for permission to call an attorney.

On November 26, Elliott was arraigned and attempted to plead "guilty—self defense". The judge who was presiding at the arraignment interpreted this as a plea of "not guilty". Such a plea was entered and, since Elliott said he had no attorney, the presiding judge appointed E. Everett Lane, Esq., to represent him. Lane entered his appearance the next day, November 27, but shortly thereafter was appointed a Judge of the People's Court of Baltimore City. Dallas F. Nicholas, Esq., a lawyer of wide experience in the Criminal Court, was thereupon appointed counsel for Elliott and entered his appearance on January 16, 1957. Nicholas gave devoted service to his client before, during and after the trial. He saw Elliott in jail half a dozen times before the trial, obtained a copy of the written statement and showed it to Elliott, who told him that it had been voluntarily given. Nicholas decided not to object to the statement, and he and Elliott agreed that Elliott should take the stand.

The trial came on before Judge Tucker and Judge Cullen in the Criminal Court of Baltimore. One of the State's witnesses was Maude Belle Beckwith, who testified to facts tending to answer the self defense argument. She contradicted herself several times in her testimony, but there is no substantial basis for the contention that these contradictions prove deliberate perjury, and no basis whatever for the contention that the State knowingly used perjured testimony. The experienced judges, no doubt, gave such weight to her testimony as it deserved. There was other evidence, aside from the statement, which incriminated Elliott.

The trial resulted in a verdict of guilty of murder in the first degree. Sentence was suspended pending a motion for a new trial, which Nicholas filed and argued. The motion was denied, and

on May 6, 1957, petitioner was sentenced to death. Shortly thereafter Nicholas entered an appeal to the Court of Appeals of Maryland, which resulted in an affirmance of the judgment. Elliott v. State, 215 Md. 152, 137 A.2d 130 (1957).

In February 1958, while considering an application for executive clemency, Nicholas learned that there was insanity in Elliott's immediate family, and for the first time felt that there might be some reason to ask for a mental examination. Such an examination was made by Dr. Manfred S. Guttmacher, Chief Medical Officer of the Supreme Bench of Baltimore City, who concluded that Elliott was "technically responsible" under the Maryland law, but that because of his mental deficiency and his mental illness (a paranoid schizophrenic type) it was questionable whether Elliott should be held to the standards of behavior required of normal persons. The prison psychiatrist had previously stated that Elliott was a low grade moron with some form of schizophrenic disorder. Reports were also obtained from Dr. Boslow, Director of the Patuxent Institution, and other doctors there, who said that, while Elliott might be a responsible agent, the nature of his illness made it questionable whether he would remain in that status for any length of time. They stated that it was likely that Elliott would become overtly psychotic in the future.

On the basis of those reports, Nicholas applied for executive clemency and the Governor concluded that although the conviction was justified by the evidence the sentence should be commuted to life imprisonment. It was so commuted on January 10, 1959.

On November 23, 1960, Elliott began a proceeding under the Maryland Post Conviction Procedure Act (PCPA), and counsel was appointed to represent him therein. A hearing was held before Judge Allen, in which only the attorneys participated.

In his PCPA application Elliott raised nine points; his counsel added four more. Two of the points are material here:

"(2) Inadmissibility of defendant's statement to the police, because they did 'not advise him of his rights to counsel before answering any questions'; that they 'led him to believe that there was nothing more serious against him than assault and shooting', and that he was not informed, before he made his statement, that the victim had died and that he was facing a murder charge."

With respect to point (2), Judge Allen held:

"This relates to an alleged irregularity prior to trial, which must be raised at the trial or on a direct appeal and not in a collateral proceeding. (Rice v. Warden, 214 Md. 613, [135 A.2d 622]; Ferguson v. Warden, 218 Md. 644, [145 A.2d 772]; Price v. Warden, 220 Md. 643, [151 A.2d 166])."

"(4) Perjured testimony of Maude Belle Calhoun [Beckwith]."

With respect to point (4), Judge Allen said:

"At the hearing, Mr. Jacobson informed the Court that in his conference with his client, he sought further information from him with respect to the claim of perjured testimony. The petitioner, however, was unable to cite any facts or circumstances which would indicate that any State officer colluded in presenting any allegedly perjured testimony, or knew it was perjured, assuming that to be a fact. In the absence of such collusion or knowledge, this objection cannot be the basis for relief under the Act. (Northington v. State, 221 Md. 586, [155 A.2d 651]; Brown v. Warden, 221 Md. 582, [155 A.2d 648]; State v. D'Onofrio, 221 Md. 20, [155 A.2d 643])."

Judge Allen also disposed of the other points and denied relief. Application for leave to appeal to the Court of Ap-

peals of Maryland was denied. Elliott v. Warden, 225 Md. 645, 171 A.2d 708 (1961). Certiorari was denied by the Supreme Court, 368 U.S. 866, 82 S.Ct. 115, 7 L.Ed.2d 63 (1961).

Elliott then filed a petition for a writ of habeas corpus in the Baltimore City Court, contending that he was entitled to rely on the defense of not guilty by reason of insanity. The record was carefully reviewed by Judge Prendergast, who denied the petition on June 28, 1962. An attempt to secure certiorari from the decision of Judge Prendergast failed. Elliott v. Warden, Maryland Penitentiary, 371 U.S. 916, 83 S.Ct. 263, 9 L. Ed.2d 174 (1962).

Elliott then filed a petition for a writ of habeas corpus here. With respect to one of the points raised this Court said:

"(4) Use in evidence against him of a confession obtained against his will and after he had been denied the right to counsel by police.—This point was raised in somewhat different form before the State court and was disposed of as points 2 and 9 in Judge Allen's opinion. More specific allegations in the present petition and the fact that Judge Allen's decision, which was based partly on waiver, was rendered before the decisions of the Supreme Court in Fay v. Noia, 372 U.S. 391, [83 S.Ct. 822, 9 L.Ed.2d 837], and other recent cases, warrant a reconsideration of this point either by the State courts or this court or both.

"In the interest of comity and for the various reasons indicated with respect to the several points above, this court concludes that the present petition should be denied at this time, without prejudice to the right of petitioner to present a new petition to this court after petitioner has availed himself of whatever State remedies may presently be available to him.

"It is so ordered."

Petitioner then filed a second application under the PCPA, in which he raised the same contentions he had raised in this Court. That application was referred to Judge Cardin, who said:

"A review of the above contentions reveals that the petition asserts no grounds for relief which could not have been raised in the original or amended petition.

"The Court, therefore, finds that the four contentions raised in the present petition have been waived in accordance with Code Article 27, Section 645H, and the relief prayed is hereby denied this 11th day of October, 1963."

An application for leave to appeal from that decision was denied by the Court of Appeals of Maryland for substantially the same reasons. Elliott v. Warden, 233 Md. 649, 197 A.2d 237 (1964). Petitioner thereupon filed the present application for a writ of habeas corpus.

### Discussion

■ (1) The facts do not support Elliott's contention that he was denied an examination with respect to his mental capacity to stand trial. No such examination was suggested by Elliott or by his counsel, and no reason appeared at the time why such an application should have been made.

■ (2) There is no evidence of perjury on the part of Maude Belle Beckwith which would justify granting relief in this case.

■ (3) (a) The Court has found that Elliott never requested that counsel be appointed to represent him before his arraignment in the Criminal Court, nor did he ever make a request to telephone or otherwise communicate with an attorney. His trial attorney, Nicholas, testified that Elliott told him that the statement had been voluntarily given, and Nicholas did not object to it when it was offered by the State. Indeed, the statement contained the same claim of self defense upon which Elliott relied at his trial.

Nevertheless, the statement was given after Elliott had been indicted and before he had been advised of his right to counsel. It contained admissions as well as exculpatory matter.

In Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959), decided after Elliott's conviction had been affirmed, but before the PCPA proceedings, the majority of the Supreme Court found it unnecessary to decide the question whether the mere fact of an indictment rendered a confession inadmissible, because, applying traditional principles, they found that the totality of the circumstances under which the confession was obtained proved that it was involuntary. Four concurring Justices felt that the Constitution required reversal of the conviction upon the sole and specific ground that the confession was deliberately elicited by the police after the defendant had been indicted.

If the test applied by the majority in Spano is applicable, I would find that the circumstances in this case are quite different from those in Spano; that the statement was voluntarily given by Elliott to the police officers; and that its admission in evidence does not require that his conviction be set aside.

▮ (3) (b) Spano, however, is not the last word. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, was decided on May 18, 1964, three months after the Court of Appeals of Maryland denied Elliott's application to appeal from the dismissal of the second PCPA proceeding. In Massiah the Court held that once there has been an indictment the prosecution is not entitled to secure admissions from the accused, in the absence of counsel. It is true that Massiah involved a federal prosecution, but the decision was based on constitutional grounds, and it is clear from the opinions in Massiah and in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758,

12 L.Ed.2d 977 (1964), that the same rule is now applicable to the States under the Fourteenth Amendment. See also Davis v. North Carolina, 4 Cir., 339 F.2d 770 (1964).

Footnote 14 to the majority opinion in Escobedo contains the following statement: "The accused may, of course, intelligently and knowingly waive his privilege against self-incrimination and his right to counsel either at a pretrial stage or at the trial. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461." 378 U.S. at 490, 84 S.Ct. at 1765.

▮ It has not yet been decided by the Supreme Court, the Court of Appeals of Maryland, or the Fourth Circuit, whether and to what extent Massiah or Escobedo may be retroactively applied. Those cases, however, raise a new question, presented by Elliott's contention (3) (b) herein, which has never been presented to the Maryland Courts by him or in any other case to which this Court has been referred. The point could not have been presented to the Maryland Courts in its present form at the trial or in either of the PCPA proceedings, because Massiah had not been decided. Accordingly, despite the rulings in Elliott's second PCPA proceeding, this Court feels that in the interest of comity, and because of the effect a decision herein would have on many other cases, the Maryland Courts should be given an opportunity to decide the points raised by Elliott's contention (3) (b) before this Court rules on those points.

This Court will therefore postpone entering any order herein until Elliott has filed a new petition under the PCPA raising that point and the Maryland Courts have had an opportunity to consider the effect of Massiah and of any question of waiver which may be raised by the Attorney General.